**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**SAMUEL MAYFIELD**                                                                       **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO. 2:13-cv-73-KS-MTP**

**MARK BREWER, in his official and
individual capacity and CITY OF
LAUREL, A Municipal Corporation**                                              **DEFENDANTS**

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on the Motion for Summary Judgment [98] of the

Defendants Mark Brewer and the City of Laurel, Mississippi.  Having considered the

submissions of the parties, the record, and the applicable law, the Court finds that the

motion should be granted in part and denied in part.

**<u>I.  BACKGROUND</u>**

The Plaintiff Samuel Mayfield asserts several claims under Title 42 U.S.C. §

1983 arising from his arrest for failure to comply with a police command and resisting

arrest on February 8, 2013.  Defendant Mark Brewer is a Sergeant with the City of

Laurel Police Department.  Sergeant Brewer is the law enforcement officer that arrested

Mayfield.

On February 8, the Laurel Police Department (the "Department") received a 911

call concerning a robbery occurring outside of the Walgreens in the City of Laurel (the

"City").  The caller advised that a black male wearing all brown clothing had snatched a

woman's medication from her hand and taken off running.  The dispatcher was also

advised that no one was hurt and that the suspect did not have a weapon.  Shortly after

this initial call, another individual contacted the Department concerning the incident.

This individual stated that she had been listening to the police radio and a black male matching the description of the suspect and carrying a bag of medication recently entered a nearby Waffle House.  Information regarding the robbery and the suspect's possible location was dispatched to officers on patrol in the City.  Sergeant Brewer received this information while he was on duty in his police car, alone.

At his deposition, Mayfield testified to the following circumstances relating to his arrest by Sergeant Brewer on February 8.  At that time, Mayfield was employed by the City as a skilled laborer in its public works department.  (*See* Mayfield Dep. [105-1] 28:17-30:1.)  Mayfield reported to work wearing his city uniform, which mostly consisted of brown clothing.  (*See* Mayfield Dep. [105-1] 42:19-25.)  Mayfield received permission from his supervisor to go to the MEA Clinic during lunch because he felt sick that day. (*See* Mayfield Dep. [105-1] 38:2-39:2.)  Mayfield was diagnosed with strep throat and prescribed certain medications at the MEA Clinic.  (*See* Mayfield Dep. [105-1] 39:10-23.)  After leaving the MEA Clinic, Mayfield went to the Thirteenth Avenue Pharmacy and had his prescriptions filled.  (*See* Mayfield Dep. [105-1] 39:24-40:2.)  Mayfield then went to the Waffle House and ordered a bowl of chili to go since he had a few minutes remaining on his lunch break.  (*See* Mayfield Dep. [105-1] 41:4-42:7.)  Upon exiting the Waffle House, Mayfield observed Sergeant Brewer pull into the parking lot in his police car.  (*See* Mayfield Dep. [105-1] 43:20-44:8.)  Sergeant Brewer exited the car and basically told Mayfield, "[G]et your ass over here to this car."  (Mayfield Dep. [105-1] 51:4-7.)  Mayfield then began walking toward Sergeant Brewer and "asked him what's the problem; what's going on."  (Mayfield Dep. [105-1] 45:22-46:2.)  Sergeant Brewer next grabbed Mayfield's arm and took him to the police car.  (*See* Mayfield Dep. [105-1]

47:1-48:6.)  Sergeant Brewer told Mayfield that he "had robbed Walgreen's or took something from Walgreen's."  (Mayfield Dep. [105-1] 49:2-3.)  Upon reaching the police car, Sergeant Brewer slammed Mayfield onto the hood, told Mayfield he was under arrest, and placed his right arm in handcuffs.  (*See* Mayfield Dep. [105-1] 50:8-9, 51:8-52:7.)  Mayfield then raised his left arm, questioned why he was being handcuffed, and denied any wrongdoing.  (*See* Mayfield Dep. [105-1] 52:10-53:8.)  At that point, Sergeant Brewer had control of Mayfield's right arm.  (*See* Mayfield Dep. [105-1] 54:1-6.)  Also, other officers had surrounded Mayfield and were going through his wallet and belongings.  (*See* Mayfield Dep. [105-1] 54:4-55:3.)  Sergeant Brewer next grabbed Mayfield's left arm and placed it behind his back.  (*See* Mayfield Dep. [105-1] 58:9-14.)  Mayfield did not tense up or offer any resistance upon his left arm being grabbed.  (*See* Mayfield Dep. [105-1] 58:18-59:4.)  After both of Mayfield's arms were behind his back, Sergeant Brewer struck Mayfield in the buttocks with his knee three or four times.  (*See* Mayfield Dep. [105-1] 55:4-6, 61:13-19.)  Mayfield was then lifted off of his feet and taken to the ground.  (*See* Mayfield Dep. [105-1] 55:7-10.)  Approximately ten to fifteen seconds passed between the time Mayfield raised his left hand and he was taken to the ground.  (*See* Mayfield Dep. [105-1] 56:20-25.)  Mayfield did not resist being handcuffed before he was taken to the ground.  (*See* Mayfield Dep. [105-1] 115:15-17.)  Upon striking the ground, Mayfield was knocked unconscious for approximately fifteen seconds.  (*See* Mayfield Dep. [105-1] 61:24-62:1.)  When he came to, Mayfield noticed three or four officers standing over him; also, Sergeant Brewer had his knee or foot on Mayfield's back.  (*See* Mayfield Dep. [105-1] 62:2-12.)  Mayfield was in pain; he thought his left foot was broken.  (*See* Mayfield Dep. [105-1] 63:14-19.)  At no time did Mayfield

resist being arrested or disobey any of Sergeant Brewer's commands.  (*See* Mayfield Dep. [105-1] 117:16-21.)  Later that day, after he was booked and released from jail, Mayfield was taken by ambulance to South Central Regional Medical Center, where he was advised that he had three fractures in his left foot.  (*See* Mayfield Dep. [105-1] 70:16-71:13.)

Sergeant Brewer testified by deposition to the following particulars relating to this dispute.  The Department dispatcher advised that the witness to the robbery at Walgreen's stated that she did not see a weapon.  (*See* Brewer Dep. [105-2] 16:4-12.) Sergeant Michael Reaves and Sergeant Brewer arrived at the Waffle House at approximately the same time.  (*See* Brewer Dep. [105-2] 18:3-9.)  Upon his arrival at the Waffle House, Sergeant Brewer observed Mayfield exit the door, wearing all brown and carrying a bag of medicine.  (*See* Brewer Dep. [105-2] 23:7-18.)  Sergeant Brewer told Mayfield to come over and place his hands on the police car.  (*See* Brewer Dep. [105-2] 24:1-20.)  Mayfield kept walking away from Sergeant Brewer and said something to the effect of, "What do you want?  I haven't done anything."  (Brewer Dep. [105-2] 25:3-26:1.)  Sergeant Brewer then seized Mayfield's hand and pulled him over to the police car.  (*See* Brewer Dep. [105-2] 29:4-30:6.)  As Sergeant Brewer took Mayfield to the police car, he told Mayfield to place his hands on the car.  (*See* Brewer Dep. [105-2] 30:18-25.)   Mayfield initially complied, but then started pushing off the car and removing his hands while steadily asking what he had done and denying any wrongdoing.  (*See* Brewer Dep. [105-2] 31:4-18.)  Sergeant Brewer was able to place one of Mayfield's arms in handcuffs, but Mayfield kept flailing his other arm and moving his body such that Sergeant Brewer was unable to secure his other arm.  (*See* Brewer

-4-

Dep. [105-2] 33:5-34:9.)  Sergeant Brewer repeatedly instructed Mayfield to place his hands behind his back and stop resisting.  (*See* Brewer Dep. [105-2] 34:17-35:16.) Mayfield did not comply with these instructions.  (*See* Brewer Dep. [105-2] 34:17-35:16.) After struggling with Mayfield for several seconds, Sergeant Brewer attempted to place a knee strike to Mayfield's common peroneal, a nerve running down his thigh.   (*See* Brewer Dep. [105-2] 39:13-40:21.)  Sergeant Brewer missed and struck Mayfield's buttocks.  (*See* Brewer Dep. [105-2] 41:7-9.)  Sergeant Brewer then took Mayfield to the ground so that he could have more control and finish the arrest.  (*See* Brewer Dep. [105-2] 41:10-20.)  Sergeant Reaves did not assist Sergeant Brewer in his efforts to place Mayfield in handcuffs.  (*See* Brewer Dep. [105-2] 44:1-9.)  Other police officers arrived on the scene after Sergeant Brewer had Mayfield on the ground.  (*See* Brewer Dep. [105-2] 38:21-24.)  Once Mayfield was handcuffed, Sergeant Brewer determined that he was not the suspect as to the Walgreen's robbery because the medication Mayfield was carrying belonged to Mayfield.  (*See* Brewer Dep. [105-2] 44:10-45:2.) Nonetheless, Mayfield was arrested for failing to comply with a police command and resisting arrest.  (*See* Brewer Dep. [105-2] 38:2-20.)  Mayfield never displayed a weapon or threatened anyone before Sergeant Mayfield used force against him.  (*See* Brewer Dep. [105-2] 29:16-20, 36:16-22.)

The parties have placed into the record two videos of Mayfield's arrest.  Both videos were obtained from security cameras at the Waffle House.  One video shows a wide view of the scene (the "Wide Video"), and captures Sergeant Brewer and Mayfield's initial interactions outside the Waffle House.  The second video has a narrower focus (the "Narrow Video"), and better shows Sergeant Brewer and Mayfield's

interactions at Sergeant Brewer's police car.  Neither the Wide Video nor the Narrow Video contains an audio track.  Furthermore, in the Court's view, neither video conclusively establishes whether Mayfield actively resisted Sergeant Brewer's efforts to detain and arrest him.  The Narrow Video does appear to show Mayfield raising one of his arms and attempting to turn and interact with Sergeant Brewer.  However, Mayfield is quickly turned around, and several seconds pass with both of Mayfield's arms seeming to be either behind his back or down at his sides before Sergeant Brewer knees Mayfield and throws him down on the pavement.  Sergeant Reaves and a drug court representative are standing within a few feet of Sergeant Brewer and Mayfield when Mayfield is taken to the ground.  (*See* Brewer Dep. [105-2] 36:10-15, 45:25-46:8.)

Mayfield has also submitted the deposition testimony of Brittany Arrington in opposition to summary judgment.  Arrington was working as a waitress at the Waffle House on February 8.  (*See* Arrington Dep. [105-9] 19:20-20:2.)  Arrington provided the following statements relevant to this litigation:  she observed Mayfield walk toward a police officer after he was told to come here; "[h]e didn't resist or anything"; Mayfield did not curse or threaten the officer; the officer pushed Mayfield against a police car and kicked him; and, Mayfield and the officer subsequently fell to the ground and several additional officers jumped on top of them.  (*See* Arrington Dep. [105-9] 11:14-22, 13:2-14:13, 29:8-14.)

On April 10, 2013, Mayfield filed his Complaint [1] against Sergeant Brewer, in his official and individual capacities, in this Court.  The Complaint asserts a cause of action under 42 U.S.C. § 1983 based on the allegation that excessive force was used against Mayfield during his arrest in violation of the Fourth Amendment of the United

States Constitution.  Subject matter jurisdiction is asserted under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  On May 6, 2013, Mayfield filed his Amended Complaint [3], adding a cause of action against the City for failing to train police officers, failing to supervise officers, or permitting officers to use excessive force.  On May 22, 2013, Mayfield filed his Second Amended Complaint [7], adding a cause of action for First Amendment and Fourth Amendment retaliation.  Mayfield alleges that he was terminated from his position with the City on or about May 20, 2013, because of his decision to file this action.  On November 21, 2013, Mayfield filed his Third Amended Complaint [29], including a Fourth Amendment unlawful arrest claim against Sergeant Brewer.  The Defendants seek a grant of summary judgment on all of Mayfield's claims.

## II.  DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is

'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary Judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322).

### B.   Analysis

Mayfield's constitutional claims must be viewed through the framework of 42 U.S.C. § 1983. Section 1983 does not provide a general remedy for state law torts or allow access to federal courts for all individuals suffering injuries at the hands of state actors. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). The statute "affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.*

(quoting 42 U.S.C. § 1983). To state a cognizable § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)). Official conduct by a governmental actor in connection with a purported constitutional violation, i.e., the "color of law" requirement,[1] is not in dispute in this case.

Section 1983 claims may be brought against government employees "in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted). Individual defendants, but not governmental entities, may rely on the defense of qualified immunity. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008) (citing *Owen v. City of Independence*, 445 U.S. 622, 657, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980)). "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). In

---

[1] *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010).

order to overcome the defense of qualified immunity, the plaintiff must show:  "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct."  *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)).  Courts have discretion to address the second inquiry first.  *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

### 1.    Excessive Force

Sergeant Brewer has asserted the defense of qualified immunity.  The Court will first consider whether Mayfield has adduced facts supporting the existence of a constitutional violation.  "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865, 188 L. Ed. 2d 895 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).  In order to establish a Fourth Amendment violation, Mayfield must show that he suffered "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable."  *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).  The Defendants do not argue that the fractures to Mayfield's foot were constitutionally insignificant.  Consequently, the Court will focus on whether the force producing that injury was clearly excessive and objectively unreasonable.  In *Graham*, the Supreme Court instructed that a court conducting this inquiry should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight." 490 U.S. at 396 (citation omitted).  A court must conduct an objective analysis:  the use of force is to be considered from the viewpoint of a reasonable officer at the scene, rather than through 20/20 hindsight, and the subject officer's intent or motivations are not determinative.  *See id.* at 396-97 (citations omitted).

None of the *Graham* factors can be resolved in Sergeant Brewer's favor at this stage of the litigation.  As to the crime Mayfield was suspected of committing, a robbery, the Department dispatcher advised that the witness did not see the suspect with a weapon.[2]  *Cf. Chacon v. Copeland*, No. 13-50521, 2014 WL 3894270, at *1, 6 (5th Cir. Aug. 11, 2014) (finding that a fact issue existed as to the severity of the crime where there were reports of an individual using a gun in a threatening manner, but the plaintiff was never accused of having a weapon).  The crimes Mayfield was actually arrested for (disobeying a police command and resisting arrest) cannot be considered severe for purposes of summary judgment since Mayfield denies refusing to comply with any of Sergeant Brewer's commands or offering resistance during the course of his arrest.[3]  *See, e.g.*, *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (although the plaintiff was charged with resisting arrest, the undisputed facts did not show that the plaintiff actually resisted arrest), *cert. denied*, 134 S. Ct. 162 (2013); *Ramirez*, 716 F.3d at 373, 378 (accepting the plaintiff's version of his arrest for disorderly conduct in resolving the first *Graham* factor against the defendant officer); *Massey v. Wharton*, 477 Fed. Appx.

---

[2] (*See* Brewer Dep. [105-2] 16:4-12.)

[3] (*See* Mayfield Dep. [105-1] 58:18-59:7, 115:15-17, 117:16-21.)

256, 263 (5th Cir. 2012) (same where the plaintiff was arrested for disorderly conduct and resisting arrest); *Adams v. May*, 903 F. Supp. 2d 433, 441-42, 444-45 (S.D. Miss. 2012) ("[T]he crime for which Adams was being arrested, disorderly conduct [which encompasses an individual failing to obey an officer's command], is not a severe crime . . . ."); *Upchurch v. Harcharik*, No. 3:11cv252, 2012 WL 3913350, at *4, 5 (S.D. Miss. Sept. 7, 2012) ("[T]he crime at issue [failure to comply with an order] was a misdemeanor and not severe.")

Portions of the summary judgment record militate against the conclusion that Mayfield posed an immediate threat to the safety of Sergeant Brewer or others at the time of his arrest. Sergeant Brewer testified that he had no recollection of Mayfield threatening him or any of the other officers at the scene. (*See* Brewer Dep. [105-2] 36:16-22, 42:22-24.) Brittany Arrington testified that Mayfield did not do anything to threaten the officers. (*See* Arrington Dep. [105-9] 13:19-20, 14:6-13, 17:11-13.) Further, both the Wide Video and Narrow Video show Sergeant Reeves and a drug court representative standing within a few feet of Sergeant Brewer and Mayfield at the time Sergeant Brewer takes Mayfield to the ground. (*See* Brewer Dep. [105-2] 36:10-15, 45:25-46:8.) Thus, it is not beyond reason to presume that Mayfield would have been quickly apprehended had he somehow been able to break away from Sergeant Brewer. The Court also notes that Sergeant Brewer appears considerably taller and larger than Mayfield in the videos, and Sergeant Brewer testified at Mayfield's criminal trial that he weighs significantly more than Mayfield. (*See* Doc. No. [105-4] 38:25-39:2.) Based on these facts and the resulting inferences, the jury could find that a reasonable officer, standing in Sergeant Brewer's shoes, would not have viewed Mayfield as posing

an imminent safety threat.

As to the third *Graham* factor, there is no contention that Mayfield was attempting to evade arrest by flight when he was taken to the ground by Sergeant Brewer.[4] Also, the facts are in dispute as to whether Mayfield was actively resisting arrest at that time. Mayfield contends that he offered no resistance to being handcuffed. (*See* Mayfield Dep. [105-1] 58:18-59:7, 115:15-17.) On the other hand, Sergeant Brewer contends that Mayfield "kept flailing" and "pulling away", which prevented him from placing both of Mayfield's hands in handcuffs. (*See* Brewer Dep. [105-2] 33:5-15, 34:5-9.) The Court is prohibited from "weigh[ing] the evidence and resolv[ing] disputed issues in favor of the moving party" at this stage of the litigation. *Tolan*, 134 S. Ct. at 1866 (citation and internal quotation marks omitted).

The Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). In *Scott*, the Court found that the disputed facts should have been viewed in the light depicted by a videotape that utterly discredited the plaintiff's version of events. *Id.* at 380-81. As noted above, the videos at issue in this

---

[4] The Court's focus is on this particular use of force because neither Sergeant Brewer initially grabbing Mayfield's arm nor subsequently kneeing Mayfield in the buttocks could have caused the fractures to Mayfield's foot. *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (the plaintiff must show an injury resulting "directly and only from the use of force that was excessive to the need") (citation omitted); *Breland v. Forrest County Sheriff's Dep't*, No. 2:10cv303, 2013 WL 1623997, at *12 (S.D. Miss. Apr. 15, 2013) ("[T]he Court must separate out the specific conduct or force alleged to have resulted in a cognizable injury.").

case fail to resolve the disputed matter of whether Mayfield actively resisted arrest.  *Cf. Ramirez*, 716 F.3d at 374 (refusing to apply the rule from *Scott* because the contents of a video were "too uncertain to discount" the plaintiff's version of events).  It does appear in the Narrow Video that Mayfield raises one of his arms and attempts to turn and face Sergeant Brewer several seconds before he is taken to the ground.  However, the Fifth Circuit has found similar actions by arrestees insufficient to negate the existence of a jury issue.  *See Chacon*, 2014 WL 3894270, at *7 (finding no error in the district court's holding that the jury should consider whether the plaintiff's shove of an officer constituted active resistance); *Ramirez*, 716 F.3d at 378-79 (determining that jury issues existed as to the plaintiff's level of resistance after he pulled his arm out of the officer's grasp and before he was tased and handcuffed); *accord Woods v. Spellman*, No. 4:07cv94, 2010 WL 2605833, at *4 (N.D. Miss. June 22, 2013) (denying summary judgment on the plaintiff's excessive force claim even though the plaintiff admitted removing his left hand from the officer's grasp during the officer's attempt to handcuff him).

Based on the totality of the circumstances, the Court finds that fact issues for trial exist as to Sergeant Brewer's alleged violation of Mayfield's constitutional right to be free from an unreasonable seizure.  Therefore, the first prong of Sergeant Brewer's qualified immunity defense does not warrant a grant of summary judgment in his favor.

As to the second step of the qualified immunity analysis, a right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  As recently discussed by the Fifth

Circuit:

> "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). "The central concept [of the test] is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (quoting *Hope*, 536 U.S. at 740, 122 S.Ct. 2508). Further, while the Supreme Court has stated that "courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case,'" it has also recently reminded us that we "must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 134 S.Ct. at 1866 (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151).

*Luna v. Mullenix*, 765 F.3d 531, 543 (5th Cir. 2014).

At the time of Mayfield's arrest, it "was clearly established that . . . the right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it . . . .'" *Bush*, 513 F.3d at 502 (quoting *Saucier v. Katz*, 533 U.S. 194, 208, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Yet, "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Id.* (citing *Graham*, 490 U.S. at 396.) Under Mayfield's version of events, he was not resisting arrest at the time of Sergeant Brewer's use of force. Further, as discussed above, the remaining *Graham* factors weigh in Mayfield's favor at the summary judgment stage. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . ." *Graham*, 490 U.S. at 396 (citation omitted). However, again crediting Mayfield's view of the subject incident, Sergeant Brewer should have known that he could not take

Mayfield to the ground with such force as to render him unconscious and cause fractures to his left foot while Mayfield was not offering any active resistance.[5]  The second step of the qualified immunity inquiry fails to warrant a grant of summary judgment in Sergeant Brewer's favor as a result.

The facts at trial may ultimately prove Sergeant Brewer's version of Mayfield's arrest to be correct.  Nonetheless, the record presently before the Court and the Court's current duty to resolve facts in the Plaintiff's favor necessitate that Sergeant Brewer's request for summary judgment on the excessive force claim be denied.  Sergeant Brewer's qualified immunity defense may be revisited after the disputed facts are decided by the jury at trial.  *See Oliver v. Holmes County*, No. 3:12cv683, 2013 WL 4039392, at *6 (S.D. Miss. Aug. 7, 2013) ("Given these factual disputes, the Court finds that Wilson's request for qualified immunity should be denied without prejudice."); *Adams*, 903 F. Supp. 2d at 443 ("[S]ummary judgment is inappropriate because

---

[5] *See, e.g.*, *Anderson v. McCaleb*, 480 Fed. Appx. 768, 773 (5th Cir. 2012) ("Officer Brant Smith should have known that he could not beat Anderson after he stopped resisting arrest or slam Anderson to the ground after he was handcuffed."); *Massey*, 477 Fed. Appx. at 258, 263 (finding the defendant officer not entitled to qualified immunity in regard to the plaintiff's allegations that she was grabbed by the neck, thrown to the ground, and stomped in the back notwithstanding her compliance with the officer's instructions); *Staten v. Tatom*, 465 Fed. Appx. 353, 359 (5th Cir. 2012) (affirming the district court's denial of qualified immunity on the plaintiff's excessive force claim; the district court found that the plaintiff, who claimed not to have resisted arrest, was taken to the ground in a particularly forceful manner); *Bush*, 513 F.3d at 502 (the officer "should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued"); *Adams*, 903 F. Supp. 2d at 444-45 (denying summary judgment where a factual dispute existed as to whether the plaintiff offered active resistance at the time she was slammed into a vehicle and shoved to the ground); *Woods*, 2010 WL 2605833, at *5 (holding that the defendant officer's use of a choke hold that rendered the plaintiff unconscious was objectively unreasonable because the plaintiff was not actively resisting arrest and other officers were available to assist the defendant in arresting the plaintiff).

qualified immunity can only be determined after the factual dispute has been resolved by a fact-finder.") (citations omitted).

### 2.    Unlawful Arrest

The Defendants contend that Mayfield's unlawful arrest claim fails as a matter of law.  "In order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)).  "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville*, 567 F.3d at 164 (citation omitted).  When an individual is arrested for multiple crimes, the existence of probable cause as to a single criminal violation will negate a constitutional violation.  *See id.*  A law enforcement officer is entitled to "qualified immunity if he 'reasonably but mistakenly conclude[s] that probable cause is present.'"  *Massey*, 477 Fed. Appx. at 260 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)).

The following segments of Sergeant Brewer's deposition shed light on the factual bases for the criminal charges underlying Mayfield's arrest:

Q.    Okay.  What was he under arrest for?

A.    Failing to comply.

Q.    Okay.  And what -- again, this is important.  What command did he fail to comply with?

A.    He failed to come to my car and place his hand and leave them on the car as I told him to do so.

Q.     Okay.  And that's the extent of the factual basis for your decision to arrest him for disorderly conduct?

A.     On those charges, yes.

Q.     Okay.  When did you decide to arrest him for resisting arrest?

A.     When he failed to put his hand behind his back and allow me to handcuff him.

Q.     Okay.  And is that the extent of the factual basis for that arrest?

A.     Yes.

(Brewer Dep. [105-2] 38:2-20.)  Portions of Mayfield's deposition testimony compete with Sergeant Brewer's statements regarding whether Mayfield initially failed to walk toward Sergeant Brewer, as commanded;[6] whether Sergeant Brewer gave Mayfield time to walk to his police car before Sergeant Brewer grabbed Mayfield and took him to the car;[7] whether Mayfield failed to place his hands on the car;[8] whether Mayfield was told to leave his hands on the car;[9] whether Sergeant Brewer's actions caused Mayfield to remove his hands from the car;[10] and, whether Mayfield resisted being placed in handcuffs.[11]  Certain of Mayfield's testimony is buttressed by Brittany Arrington's statement that Mayfield "didn't resist or anything."  (Arrington Dep. [105-9] 29:12-14.) The Wide Video and Narrow Video are not so clear that Mayfield and Arrington's views

---

[6] (*See* Mayfield Dep. [105-1] 45:9-13.)

[7] (*See* Mayfield Dep. [105-1] 49:9-13.)

[8] (*See* Mayfield Dep. [105-1] 112:3-12.)

[9] (*See* Mayfield Dep. [105-1] 54:13-15.)

[10] (*See* Mayfield Dep. [105-1] 112:13-113:17.)

[11] (*See* Mayfield Dep. [105-1] 58:18-59:7, 115:15-17.)

of the incident are "blatantly contradicted by the video evidence." *Chacon*, 2014 WL 3894270, at *5 (declining to reject the plaintiff's factual allegations based on uncertain video evidence).

Again, the Court cannot weigh evidence or resolve facts in the Defendants' favor upon consideration of summary judgment. *See Tolan*, 134 S. Ct. at 1866. The jury—with its ability to listen to live testimony, make credibility determinations, and weigh evidence—is the appropriate entity to view the video evidence, listen to the witnesses, and then choose between the parties' competing versions of events. The present dispute over the facts and circumstances leading to Mayfield's arrest precludes any ruling as a matter of law that probable cause existed for the arrest. Sergeant Brewer's request for summary judgment on Mayfield's unlawful arrest claim will therefore be denied. *Cf. Massey*, 477 Fed. Appx. at 260-61 (affirming the trial court's denial of summary judgment because, accepting the plaintiffs' allegations, probable cause was lacking and no reasonable officer could believe otherwise); *Sullivan v. Allred*, 297 Fed. Appx. 339, 342 (5th Cir. 2008) (vacating the district court's grant of summary judgment since the trier of fact had to determine whether the plaintiff "inappropriately resisted arrest, giving the officers probable cause to arrest him"); *Adams*, 903 F. Supp. 2d at 442-43 (denying summary judgment on the plaintiff's claim for arrest without probable cause due to conflicting evidence as to the officer's instructions to the plaintiff). Sergeant Brewer's entitlement to qualified immunity as to this claim may be reconsidered at trial. *See Oliver*, 2013 WL 4039392, at *6; *Adams*, 903 F. Supp. 2d at 443.

### 3.      Claims Under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

A governmental entity cannot be held liable on a *respondeat superior* theory of recovery under § 1983.  *See Monell,* 436 U.S. at 691.  Municipal liability via § 1983 requires that an official policy or custom be the moving force behind the constitutional violation.  *See id.* at 694-95.  In accordance with *Monell,* three elements must be satisfied in order for a municipality to be held liable for a violation of an individual's federal rights:  "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."  *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)).  Official policy necessary to establish culpability can take several forms.  *See Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 847 (5th Cir. 2009).  "It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  *Id.* (quoting *Piotrowski,* 237 F.3d at 579).  A municipality may also be held liable under § 1983 for inadequately training its police officers if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  Under any theory, "isolated unconstitutional actions by municipal employees will almost never trigger liability."  *Piotrowski,* 237 F.3d at 578 (citations omitted).

Mayfield presents two theories of recovery against the City under *Monell*:  (1) City police officers have a pervasive custom of using unnecessary and excessive force; and (2) the City has failed to adequately train its police officers on the use of force.  The City initially argues that these claims fail in the absence of an underlying constitutional violation committed by Sergeant Brewer.  Mayfield's claims against Sergeant Brewer are proceeding to trial.  Consequently, the City's first basis for dismissal is not well taken and further inquiry must be made on Mayfield's causes of action under *Monell*.

### a.  Custom of Excessive Force

Mayfield contends that a reasonable jury could find an unlawful custom of excessive force based on evidence of "six witnesses who allege similar unnecessary force used against them in similar circumstances in the last three years."  (Pl.'s Mem. in Supp. of Opp. to Mot. for SJ [106] at p. 31.)  As an initial matter, only four of the incidents cited by Mayfield are relevant to the present inquiry.  Two of the incidents (Felix Fenderson's arrest on October 24, 2013 and Terry Harper's arrest in July of 2014) post-date Mayfield's February 8, 2013 arrest.  Fenderson and Harper's arrests are irrelevant "because such incidents could not have informed . . . [the City] with respect to the instant claim."  *Cano v. Bexar County, Tex.*, 280 Fed. Appx. 404, 406 (5th Cir. 2008) (citation and internal quotation marks omitted); *see also Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 833 n.4 (W.D. Tex. 2006) (refusing to consider complaints filed after the plaintiff's arrest in determining the existence *vel non* of a widespread practice).

All four of the individuals presenting complaints potentially relevant to this matter (Desmond Pollard, Stacy Windham, Robert Conner, and Brian Pollet) have been deposed.  (*See* Doc. Nos. [105-17], [105-19], [105-21], [105-26].)  The Court's review of

the depositions and the documentation relating to these individuals' arrests raises

questions as to the similarity of those incidents and the alleged Fourth Amendment

violations at issue in this case.  "[A] pattern of *similar* violations is required"; prior

incidents cannot "be for any and all 'bad' or unwise acts, but rather must point to the

specific violation in question."  *Estate of Davis ex rel. McCully v. City of N. Richland*

*Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (citations omitted).  The record before the Court

fails to evidence any claims of injuries by Desmond Pollard, Stacy Windham, and Brian

Pollet resulting from their interactions with City police officers.  Fifth Circuit precedent

requires "that the prior acts be fairly similar to what ultimately transpired and, in the case

of excessive use of force, that the prior act have involved injury to a third party."  *Id.*; *cf.*

*Buchanan v. Gulfport Police Dep't*, 530 Fed. Appx. 307, 314 (5th Cir. 2013) (finding that

a *de minimis* injury could not support a claim of excessive force).  Furthermore,

Desmond Pollard pled guilty to resisting arrest,[12] while Robert Conner and Brian Pollet

admitted at their depositions to engaging in certain acts of physical resistance during

their arrests.[13]  As discussed above, whether an individual actively resists arrest is an

important consideration in evaluating an excessive force claim.  *See Graham*, 490 U.S.

at 396.  It does not appear that Sergeant Brewer was involved in Desmond Pollard,

Stacy Windham, Robert Conner, or Brian Pollet's complaint.

     The Court finds that four allegations of unnecessary force, each presenting

significant questions as to the complainant's ability to maintain a Fourth Amendment

---

[12] (*See* Pollard Dep. [105-21] 21:24-22:16.)

[13] (*See* Conner Dep. [105-17] 11:14-19, 15:24-16:6, 35:6-9; Pollet Dep. [105-19] 23:4-25:7.)

cause of action, over a three-year period fail to constitute a pervasive custom for purposes of municipal liability. *Compare Cano*, 280 Fed. Appx. at 407 (holding that less than a dozen excessive force claims over a fifteen-year period failed to create a fact issue concerning the existence of a municipal custom), *Pineda*, 291 F.3d at 329 (finding that eleven prior incidents involving equivocal evidence of constitutional violations could not support a pattern of illegal conduct), *and Villasana v. City of San Antonio*, No. SA-13-CV-278-XR, 2014 WL 640965, at *10-11 (W.D. Tex. Feb. 18, 2014) (two complaints of excessive force against a police officer, one in 2002 and another in 2005, failed to create "a genuine dispute of material fact about the existence of a widespread pattern of excessive force condoned by the City"), *with Backe v. City of Galveston, Tex.*, 2 F. Supp. 3d 988, 1001 (S.D. Tex. 2014) (holding that evidence of thirteen alleged victims of forty-nine separate acts of police brutality over the course of one night created a fact issue on the existence of an official custom). Customary municipal policy cannot be inferred from "isolated" incidents or "single constitutional violations." *Piotrowski*, 237 F.3d at 581 (citations omitted). A pattern of abuses must exist; that is, the prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850 (citations omitted). The "sample of alleged unconstitutional events [before the Court] is just too small." *Pineda*, 291 F.3d at 329.

Even if Mayfield had presented evidence of six prior incidents involving unequivocal abuses of police authority, the record would not support the existence of an official custom of excessive force. In *Peterson*, the Fifth Circuit assumed the truth of

twenty-seven complaints of excessive force filed between 2002 and 2005, but ruled in

favor of the municipal defendant because the plaintiff failed to submit evidence placing

those complaints in context.  588 F.3d at 851-52.  The Fifth Circuit explained:

> Twenty-seven incidents in four years, with no context as to the overall
> number of arrests or any comparisons to other cities, is not sufficient
> evidence of a pattern rising to the level of a policy. The burden of providing
> a context that would show such a pattern falls on the plaintiff, not on the City,
> and Peterson has failed to meet that burden. No reasonable jury could
> conclude based on Peterson's evidence that the City had established a
> municipal policy of using or condoning excessive force.

*Id.* at 852 n.4.  Mayfield has also presented no evidence as to the overall number of

arrests by City officers or a comparison of the number of excessive force claims

asserted in other municipalities.  Thus, as in *Peterson*, the Court's recognition of a

municipal policy of excessive force "would be effectively to hold the City liable on the

theory of respondeat superior, which is expressly prohibited by *Monell*."  *Id.* at 852

(citation omitted).

Mayfield has failed to present sufficient proof to create a genuine fact issue as to

the existence of a City policy or custom.  Therefore, Mayfield's custom of excessive

force allegation falters on the first element of municipal liability and any discussion of

the remaining elements is unnecessary.  Summary judgment will be granted in favor of

the City on this *Monell* claim.

### b.    Failure to Train

Mayfield must show the following in order to recover on his failure to train claim:

(i) that the City's training policy was inadequate; (ii) that the inadequate training policy

was a moving force behind the violation of rights; and (iii) that the City was deliberately

indifferent in adopting the training policy.  *See Valle v. City of Houston*, 613 F.3d 536,

544 (5th Cir. 2010) (citations omitted).  "[M]ere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability."  *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Synder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).  The claimant must specifically allege how a training program is inadequate, and "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform."  *Id.* (citations omitted).  Establishing a case of municipal liability based on inadequate training is a tall task.  *See Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.") (citation omitted).  "Mere negligence or even gross negligence is not enough".  *Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. Appx. 356, 359 (5th Cir. 2014) (citing *Estate of Davis*, 406 F.3d at 381).

In support of summary judgment, the City submitted copies of Sergeant Brewer's training records and cited to portions of the depositions of Sergeant Brewer and other City police officers regarding their professional training.  The documentation generally shows that City police officers receive instruction and become certified at the Mississippi Law Enforcement Training Academy, and then receive periodic training, including training on the use of force, from the Department during the course of their employment.  In opposing summary judgment, Mayfield fails to present specific facts showing the inadequacy of the subject training or meeting the other required elements of his inadequate training claim.  Instead, Mayfield offers speculation and conclusory assumptions as to what a reasonable jury could believe based on a purported absence of training documentation and the above-discussed allegations of excessive force.

Mayfield's speculative conclusions and legalistic argumentation do not give rise to jury issues precluding summary judgment. *See Goodman*, 571 F.3d at 396-97 (affirming the trial court's grant of summary judgment on the plaintiff's inadequate training claim since she failed to present evidence of training deficiencies and only speculated that procedures were not observed). Mayfield's failure to train claim against the City will also be dismissed.

### 4.    Retaliation

Mayfield's amended pleadings assert a cause of action for "First Amendment and Fourth Amendment Retaliation" based on the ground that his position with the City was terminated in retaliation for his decision to file this action. However, Mayfield's summary judgment briefing only references the "First Amendment" in the context of his retaliation claim. This portion of the Court's opinion will be limited to Mayfield's First Amendment retaliation claim. Mayfield has either abandoned his Fourth Amendment retaliation claim,[14] or failed to plead facts potentially stating such a cause of action.[15]

---

[14] *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned their claim for tortious breach of contract when their summary judgment response was limited to their bad faith claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

[15] For instance, Mayfield does not allege that Sergeant Brewer seized him in retaliation for exercising certain rights. It is also questionable whether a Fourth Amendment retaliation claim is legally cognizable. *See Deputy v. City of Seymour*, No. 1:13cv412, 2014 WL 3587468, at *9 (S.D. Ind. July 21, 2014) (the plaintiff fails to direct "the Court to a single case recognizing a Fourth Amendment retaliation claim").

It is well established that a governmental entity may not retaliate against an employee for his or her exercise of First Amendment rights. *See Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 461 (5th Cir. 1990) (citations omitted). A § 1983 claimant must show the following in order to recover on a First Amendment retaliation claim: (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the defendant's interest in promoting efficiency; and (4) the protected speech motivated the adverse employment decision. *See Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)). The City does not argue that Mayfield's termination was something other than an adverse employment decision; that Mayfield's lawsuit does not involve a matter of public concern;[16] or, that efficiency concerns outweighed Mayfield's interest in filing suit. As a result, the fourth motivation (i.e., causation) factor is dispositive.[17]

---

[16] "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2494, 180 L. Ed. 2d 408 (2011) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984)).

[17] As previously discussed, vicarious liability is not a basis for recovery against a municipality under § 1983. *See Monell*, 436 U.S. at 692. An official policy promulgated by an authorized policymaker is to be tied to the violation of law even when the First Amendment is at stake. *See Goudeau v. E. Baton Rouge Parish Sch. Bd.*, 540 Fed. Appx. 429, 438 (5th Cir. 2013). Nonetheless, assertions to the effect that the individual making the termination decision was not an official policymaker or that the decision maker was not acting pursuant to official policy are mere defenses to liability. *See, e.g.*, *Cutler v. Stephen F. Austin State Univ.*, No. 13-40685, 2014 WL 4548549, at *3 (5th Cir. Sept. 15, 2014); *Juarez*, 666 F.3d at 333. The Fifth Circuit has also joined the weight of circuit authority in holding that *Monell*'s requirements can be waived. *See Kinnison v. City of San Antonio*, 480 Fed. Appx. 271, 275 (5th Cir. 2012) (citations omitted). The City's summary judgment briefing on Mayfield's retaliation claim does not present any defenses under *Monell*. Thus, the Court will limit its analysis to whether a genuine issue

-27-

The City argues that Mayfield was terminated because he failed to appear for work and present valid excuses for his absences.  The City submits the affidavit of Shedwick Jones, the Director of Public Works for the City on or about May 20, 2013, in support of this position.  Jones's affidavit states in pertinent part:

> Prior to May 20, 2013, Mr. Samuel Mayfield was told that he would need to produce a doctor's excuse for missing work.

> Mr. Mayfield failed to provide a doctor's excuse while missing work and therefore, I made the determination to terminate his employment.

> At no time, did Mr. Samuel Mayfield's arrest nor his subsequent lawsuit have any bearing or anything to do with his termination or my decision to terminate Mr. Mayfield.

(Jones Aff. [98-2] at ¶¶ 3-5.)

Mayfield argues that the timing between his filing of an amended pleading naming the City as a Defendant and his termination (approximately ten days) creates an inference of retaliation.  Mayfield's position is supported by Fifth Circuit precedent. "Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation."  *Mooney v. Lafayette County Sch. Dist.*, 538 Fed. Appx. 447, 454 (5th Cir. 2013) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

Mayfield also references particulars aimed at showing the City's asserted reasons for his termination are pretextual, i.e., that they are false or unworthy of credence.  For instance, Rebecca Clark, the City's human resources manager, testified

---

for trial exists on the underlying alleged constitutional violation.

at deposition that prior to May of 2013, Mayfield's personnel file did not contain any
complaints about poor work performance, tardiness, or unauthorized absences.  (*See*
Clark Dep. [105-11] 76:11-77:8.)  Clark also testified that Mayfield provided medical
documentation indicating that he could not return to work until May 8 due to his broken
foot; that Mayfield returned to work on May 8; that Mayfield subsequently missed work
on May 13, 14, and 15; and, that Mayfield provided documentation from medical
providers pertaining to his absences on May 13, 14, and 15 "after the fact."  (*See* Clark
Dep. [105-11] 140:16-147:24.)  Terry Heidelberg, Mayfield's direct supervisor, testified
that he never had a problem with Mayfield being tardy or absent; that Mayfield was
never disciplined for his work performance; and, that he did not request Mayfield's
termination.  (*See* Heidelberg Dep. [105-7] 34:3-7, 36:2-13.)  Heidelberg further
provided that his understanding of the City's policy on medical leave was that if an
employee missed three days of work, he or she had to call in and submit a doctor's
excuse upon their return to work.  (*See* Heidelberg Dep. [105-7] 48:5-10, 49:23-51:15.)
Mayfield provided similar deposition testimony as to his understanding of what the City
required if an employee missed several days of work.  (*See* Mayfield Dep. [105-1] 90:6-
23.)  Mayfield also stated that he called the City prior to missing work on May 13, 14,
and 15, and provided medical excuses for these dates upon his return to work on May
16.  (*See* Mayfield Dep. [105-1] 87:1-88:20, 91:1-92:23.)  The Fifth Circuit has cited
analogous circumstances in finding summary judgment on a retaliation claim to be
inappropriate.  *See Haverda v. Hays County*, 723 F.3d 586, 596-97 (5th Cir. 2013) (the
defendant employer's explanations for the plaintiff's demotion were controverted by,
*inter alia*, the plaintiff's positive performance reviews and a co-worker's testimony to the

effect that the plaintiff did not deserve to be demoted and did not engage in certain conduct cited by the defendant for the adverse employment action).

Mayfield further contends the following statement provided by Sergeant Brewer at his deposition reveals the real reason for the City's employment decision: "From what I understand, we, as a city employee, cannot file a lawsuit against the city as long as we are employed." (Brewer Dep. [105-2] 128:10-11.)  The Court determines that Sergeant Brewer's statement, the above-discussed evidence regarding Mayfield's presentation of medical excuses for his absences, and the timing of Mayfield's termination, *in toto*, could lead a reasonable jury to find that this litigation is the reason why Mayfield is no longer a City employee.  Clearly, the affidavit of Shedwick Jones weighs against such a determination.  However, "[c]laims requiring a determination regarding intentions or motives are particularly unsuitable for summary adjudication. . . . If plaintiffs claim that some conduct on the part of defendant abridged their First Amendment rights, summary judgment may be precluded because questions concerning defendant's motives or knowledge must be determined."  *Haverda*, 723 F.3d at 592 (quoting 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2732.2 (3d ed. 2013)); *see also Click v. Copeland*, 970 F.2d 106, 114 (5th Cir. 1992) (describing the plaintiff and defendant's conflicting evidence regarding the basis for an employment decision as "fodder for the jury").  Therefore, the City's request for summary judgment on Mayfield's First Amendment retaliation claim will be denied.

## III.  CONCLUSION

Based on the foregoing, summary judgment will be granted in favor of the City on the Plaintiff's failure to train police officers and custom of excessive force claims. Plaintiff's remaining claims will proceed to trial.

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment [98] is granted in part and denied in part.  The Plaintiff's failure to train police officers and custom of excessive force claims against the City of Laurel are dismissed with prejudice.  The following of the Plaintiff's claims remain pending: Fourth Amendment excessive force claim against Sergeant Mark Brewer; Fourth Amendment unlawful arrest claim against Sergeant Mark Brewer; and, First Amendment retaliation claim against the City of Laurel.

SO ORDERED AND ADJUDGED this the 22nd day of October, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE